# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | **CRIM NO.   19-CR-21 (KBJ)** |
| | : | |
| **JEREMY SEARS,** | : | |
| Defendant. | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in issuing an appropriate sentence in this case. For the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of incarceration of 97 months to be followed by 120 months of supervised release, with the conditions recommended by United States Office of Probation. Additionally, the defendant is required by statute to register as a sex offender for a minimum period of 25 years. In support of this memorandum and recommendation, the government relies on the following points and authorities, and such other points and authorities that may be cited at the sentencing hearing.

## I.    BACKGROUND

### A.    Statement of Offense

Leading up to Thursday, December 14, 2017, an FBI task force officer, was acting in an undercover capacity as part of the Metropolitan Police Department-Federal Bureau of Investigation ("MPD-FBI") Child Exploitation Task Force. The UC had posted numerous online bulletin messages on specific social media forums, which, based on the UC's experience and information gathered from other sources, are websites that are frequented by individuals who have a sexual interest in children and incest. The bulletin messages were intended to attract

individuals with a sexual interest in children. The UC would respond to certain messages or post messages on these public forums and provided his Kik account screen name. "Kik" refers to Kik messenger, a free mobile application that permits users to send text messages and other content, including videos and images.

On Thursday, December 14, 2017, at approximately 2:17pm EST an individual using the Kik screen name, "treeman2832," subsequently identified as the defendant, Jeremy Sears sent the UC a private message via Kik instant messenger stating, "Hey." During the course of the chat, the defendant stated that he was a married father with a 10-year-old daughter residing in the Boston area.

The UC informed the defendant that he was the father of an 8-year-old daughter. The defendant requested images of the UC's purported daughter and asked him if he wanted to trade pictures. The defendant stated that he has taken nude photos of his daughter in the past, but deletes them from his phone. The defendant stated that he has not sexually abused his daughter.

During the course of the chat, the defendant sent the UC five images of his purported daughter. All of the images appear to be the same girl, and she is clothed in all of the images. The defendant requested the UC to take pictures of his purported daughter's vagina. The defendant informed the UC that he would take nude images of his daughter later in the evening and send them to the UC. The UC asked the defendant what size panties his daughter wore, to which the defendant quickly responded back, "9." The defendant then sent the UC an image depicting two pairs of children's underwear lying on a bed.

As the chat continued, the defendant asked, "U like young girl vids?" Shortly after asking, the defendant sent the UC a video depicting child pornography. Specifically, the video depicted an adult male inserting his penis in the child's anus, while inserting his finger inside the

child's vagina. The defendant then sent the UC a Dropbox link containing 102 videos. The vast majority of the videos depict female children under the age of approximately ten being sexually assaulted by adult men and women. The sexual acts depicted in the videos include vaginal and anal penetration of the minors depicted. The defendant ended the chat session stating, "My wife got home I will txt u in a little and send nudes of my daughter."

On Friday December 15, 2017, the defendant again contacted the UC and began another chat session.  During the course of the chat, the defendant sent the UC two additional links containing numerous videos depicting what appeared to be teenage and prepubescent minors engaged in sexual acts. The defendant stated that he has additional child pornography that he trades with other people. He further indicated that he had not taken pictures of his daughter the prior evening because his wife was present, but stated that he intended on taking pictures of her that evening.

On Monday December 17, 2017, the UC continued to chat with the defendant via Kik. During the course of the chat, the defendant provided the UC with his cellular phone number, which he indicated was 702- 522-0611. The UC then had a brief conversation with the defendant via text messaging at the telephone number provided before resuming a chat conversation via Kik. During the course of the chat, the defendant asked the UC if he had taken any pictures of his daughter. The UC sent the defendant an image of his purported daughter, depicting the purported child wearing a pink shirt and underwear. The image did not depict a real child.  The defendant responded, "Sexy any nude ones?" The UC asked the defendant about his sexual activity with his daughter, "what's the most you have done?" The defendant responded, "Just look touch her boob and butt."

On December 19, 2017, the defendant sent the UC two Dropbox links, titled, "X" and "dirty vids." Dropbox link "X" was a duplicate of the link that the defendant sent on December 14, 2017.  The file titled, "dirty vids" contained 116 videos depicting mostly what appeared to be adult and older teens engaging in sexual activity. The UC sent the defendant an image of his purported daughter depicting the UC holding a note near the child with the date, "12/19/17" written on a piece of paper. The defendant sent the UC two additional Dropbox links titled, "Kleine Kinder" and "V1." Both of those Dropbox links contain numerous videos depicting mostly what appeared to be older teens engaged in sexual acts.

That same day, the defendant also sent the UC five videos depicting prepubescent children being sexually abused by adult men and woman. The following are descriptions of the videos the defendant sent:

a.      A video depicting a prepubescent female masturbating an adult male penis in a bathtub;

b.      A video depicting an adult female licking a prepubescent female child's vagina while inserting a sex toy in the child's anus;

c.      A video depicting an adult male licking a prepubescent child's vagina and anus and rubbing his penis on her bare vagina and anus;

d.      A video depicting an adult female licking a prepubescent child's vagina and inserting her finger in the child's vagina; and

e.      A video of a prepubescent female sucking an adult male penis.

The defendant also sent the UC fifteen images the same day depicting child pornography. The majority of the images depict prepubescent children engaged in sexual acts. The following are examples of the images the defendant sent:

4

a.      An image of a prepubescent female child sucking an adult male penis;

b.      An image of a prepubescent female child naked from the waist down, spreading her legs apart to expose her vagina; and

c.      An image depicting a prepubescent female child being anally penetrated by an adult male penis.

On December 21, 2017, the defendant sent four images of his daughter. The images depicted a young girl in a bedroom wearing underwear and a shirt. The child does not appear to be aware that her picture is being taken. The defendant also sent an additional eleven images depicting a child who appeared to be between the ages of ten and twelve. The child was clothed, and in a laundry room. The majority of the pictures focused on the child's buttocks as she was bending over. The top of the child's buttock crack was visible in some of these images.  The defendant stated, "I love to fuck my buddies daughter," referring to the girl in the pictures.

On December 22, 2017, the defendant sent the UC three additional Dropbox links.  Two of the links, titled "X" and "Kleine Kinder" were duplicates of links that the defendant had previously sent the UC, as set forth above. The third link was entitled "V9," and contained 31 videos depicting mostly young teen and older teen girls either engaged in sexual activity or suggestively posing.

On December 26, 2017, the defendant sent the UC via Kik messenger two additional videos depicting child pornography. The first video is two minutes in length and depicts a prepubescent female being sexually abused by an adult male. The child sucks on the penis of the male, who is wearing a clown face mask to disguise his face and is digitally penetrating the child's vagina with his fingers.

In December of 2017, the FBI served an emergency disclosure request on Kik requesting subscriber information and IP access logs associated with the account. Kik responded by providing information that the associated display name was "Jeremy Sears," and that the account was associated with an unconfirmed email address of treeman2832@yahoo.com. Kik also provided IP logs between November 15, 2017, and December 14, 2017, which indicated that the account holder primarily connected to his account via an AT&T Wireless telephone.

The FBI then served an administrative subpoena on Yahoo for subscriber information associated with the email address "treeman2832@yahoo.com." Yahoo responded by providing a subscriber name of "Jeremy Sears" and a telephone number associated with the account of 508-762-6924.

The FBI served an administrative subpoena on Nextplus, the owner of the phone number provided by the defendant to the UC during the course of the chats, for subscriber information associated with telephone number 702-522-0611. Nextplus responded that the subscriber was "Jake Smith" linked to email address jeremysears2828@icloud.com.

Upon receipt of all of this information, WFO used available open source and law enforcement sensitive databases to fully identify the user of Kik account "treeman2832" as Jeremy J Sears, with a date of birth of 06/28/19XX; a social security number of 019-66-XXXX; and an address of 92B Littlerest Road, Brimfield MA 01010.

On June 22, 2018, United States Magistrate Judge for the District of Columbia, Judge Robin Meriweather signed a warrant for the arrest of the defendant for one count of Distribution of Child Pornography pursuant to 18 U.S.C. § 2252(a)(2).  Pursuant to this warrant, the defendant was arrested on June 28, 2018, while driving a car near his residence in Brimfield, MA.  Sitting on the console of the vehicle the defendant was driving was a Samsung Galaxy 8

6

cellular phone with IMEI number 357723081243962.  The FBI seized the phone following the defendant's arrest.

Following his arrest, the defendant was advised of his rights and waived them, agreeing to speak with the agents.  During the interview, the defendant admitted to sending and receiving child pornography images and videos and using Kik for approximately seven months prior to his arrest.  The defendant also admitted to using his Samsung phone to view and send these images as well as the above-described images of his own daughter.  The defendant denied offering to show anyone naked photographs of his children.

The Samsung phone was forensically examined, and located on the device was the same image depicting two pairs of children's underwear lying on a bed that the defendant had sent to the UC.  Further, the device contained several dozen thumbnail images of underage children engaged in sexually explicit conduct, including images of prepubescent children being penetrated by adult males.

### B.    Procedural Posture

The defendant was arrested on June 28, 2018, and charged by Complaint with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2).  On January 25, 2019, the government filed an Information charging the defendant with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2).  On February 21, 2019, the defendant pleaded guilty to the sole count in the Information under a written plea agreement.

## II.    SENTENCING CALCULATION

### A.  Statutory Penalties

The offense of Distribution of Child Pornography, in violation 18 U.S.C. § 2252(a)(2), carries a mandatory-minimum prison sentence of 5 years and a maximum sentence of 20 years

imprisonment, a maximum fine of $250,000, and a term of supervised release of not less than five years and up to life pursuant to 18 U.S.C. § 3583.  See Draft Presentence Investigation Report (PSR) ¶¶ 97, 103, 118.[1]  Pursuant to 18 U.S.C. § 3013(a)(2)(A), the defendant must pay a mandatory special assessment fee of $100 for each felony conviction payable to the Clerk of the United States District Court for the District of Columbia.  The defendant must also register as a sex offender for a minimum period of 25 years pursuant to 18 U.S.C. § 2250 and 34 U.S.C. §§ 20911(3), and  20915(a)(2).

### B.  Sentencing Guidelines Range

The Estimated Guidelines Range provided in the plea agreement is 97 to 121 months. See PSR ¶ 5.  The base offense level is 22 pursuant to U.S.S.G. § 2G2.2(a)(2).  The government agrees with the PSR that several specific offense characteristics apply: the offense involved a prepubescent minor or minors under the age of 12 (+2); the offense involved the knowing distribution of child pornography (+2); the offense involved the use of a computer or an interactive computer service (+2); and the offense involved 600 or more images (+5). See id. ¶¶ 28-33.  The parties did not include in the plea agreement calculation the specific offense characteristic related to material that portrays sadistic or masochistic conduct.[2]  Based on this, the parties agreed upon a total offense level of 33.  See id ¶ 5.  The defendant is entitled to a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). Id. ¶ 39.  The

---

[1]     As of the date of this memorandum, the final PSR is not available.  Therefore, all paragraph references are based on the Draft PSR and may change prior to sentencing.

[2]     As the government indicted in response to the PSR, the government agrees that the caselaw outside of the District of Columbia supports a 4-level enhancement under USSG §2G2.2(b)(4)(A) for sadistic or masochistic images due to the images in this case depicting penetration of prepubescent minors.  There is, however, no D.C. caselaw on this issue.  Because the defendant is resolving the case with a pre-indictment plea offer, the parties agreed based on the facts and circumstances of this case not to include this enhancement to limit litigation at sentencing of disputed issues.

government requests that the defendant's level be decreased by an additional point pursuant to § 3E1.1(b), as the defendant timely notified authorities of his intention to enter a guilty plea and thus permitted the government and the Court to preserve resources. § Id. ¶ 40.  With these adjustments, the defendant's total offense level is 30, according to the Estimated Guidelines Range in the plea agreement.

The defendant has a total criminal history score of zero. According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of zero establishes a criminal history category of I.  With a total offense level of 30 and a criminal history category of I, the defendant's recommended guideline sentencing range is 97 to 121 months, a supervised release range of 5 years to life, and a fine range of $30,000 to $300,000. Id. ¶¶ 5.[3]

## III.     GOVERNMENT'S RECOMMENDATION

### A.     Application of the Federal Sentencing Guidelines

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004).  As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1).  Booker, 125 S. Ct. at 756.

In post-Booker cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  See United States v. Gall, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide

---

[3]      The PSR includes the 4 points for sadistic and masochistic conduct, and therefore the total offense level after adjustments is calculated as a 34 with a resulting guideline range of 151 to 188 months, a supervised release range of 5 years to life, and a fine range of $35,000 to $350,000.  Se PSR ¶¶ 98, 104, 121.

consistency, the Guidelines should be the starting point and the initial benchmark.")  After giving

both parties an opportunity to argue for an appropriate sentence, the district court should then

consider all of the applicable factors set forth in 18 U.S.C. § 3553(a).  Id.  These factors include

"the nature and circumstances of the offense and the history and characteristics of the defendant"

(18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the

offense, to provide just punishment for the offense, to afford adequate deterrence to criminal

conduct, to protect the public from further crimes of the defendant, and to provide the defendant

with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18

U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy

statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing

disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the

offense (18 U.S.C. § 3553(a)(7)).

**B.      Basis for the Government's Recommendation**

Given the particular circumstances of this case, the government submits that a sentence of

97 months incarceration, to be followed by 10 years supervised release, and the specific

conditions of supervision recommended by the United States Office of Probation, is appropriate

and warranted based on the factors outlined in 18 U.S.C. § 3553(a).  The recommended sentence

is sufficient, but not greater than necessary to accomplish the purposes of sentencing.

The sentence recommended by the United States represents the bottom of the Estimated

Guidelines Range as outlined in the plea agreement.  Given the serious nature of the defendant's

conduct in this case and his risk to the community, balanced against his lack of criminal history

and early acceptance of responsibility, the government believes this is an appropriate sentence.

1.      **Nature and Circumstances of the Offense**

The defendant's distribution of child pornography demands the imposition of a term of incarceration. The videos and images that the defendant trafficked did not simply depict child erotica or sexual images of teenagers or underage persons—instead, they graphically depicted sexual acts being performed on prepubescent children.  He distributed these materials to a person whom the defendant believed had access to his own child, and he did so along with a request that the UC take pictures of his own daughter's vagina.  His distribution of these materials as a way to prove his bona fides as a person with a sexual interest in children to like-minded sexual abusers exemplifies the harm that the distribution of child pornography causes to the victims and to society at large.

The essence of the crime to which the defendant has pleaded guilty does not lie simply in the sharing or receiving or images and videos; it is about the children in those images and videos. It is about children who, at the moment they were photographed, are being treated at best as sexualized objects and at worst being horrifically and repeatedly sexually abused. The abuse of child pornography victims does not end, however, when the physical contact or production of images or videos is over. The abuse and harm go on as long as those images and videos are viewed, traded, collected, and used by offenders for sexual gratification. In this age, victims of child pornography must attempt to cope with the knowledge that the worst moments of their young lives are forever memorialized and available to child pornography consumers. Individuals—like the defendant—who receive, seek, view, keep, trade, distribute, and use child pornography for their own sexual gratification are part of the illicit market for child pornography, which continually re-victimizes the children in already-existing images and videos and promotes the victimization of even more children for new images and videos.

### 2. Defendant's History, Characteristics, and Cooperation

Defendants in child pornography cases often possess positive characteristics that allow them to remain undetected in society. Quite often, defendants in these cases appear to be like any other law-abiding citizen, with education, work histories, and supportive families. The danger they pose to children is often not readily apparent.

The defendant fits this mold. He has no prior criminal history, was employed at the time of his arrest, and has a supportive partner. However, in addition to the distribution of child pornography charge to which the defendant has pleaded guilty, his actions related to children in his life are also very concerning. In the course of his conversation with the UC, the defendant sent several pictures of his own daughter while she was in the privacy of her own room wearing only a shirt and underwear. It is clear from the pictures that she was not aware they were being taken. In addition, he sent the UC several images of another child of a similar age range that he referred to as a friend's daughter. The child was bending over and the top of her buttocks was visible. While these images of children were not pornographic in nature, they are extremely disturbing. The fact that the defendant would send real pictures of his own daughter partially undressed in the hopes of obtaining pictures of the UC's daughter shows the lengths the defendant was willing to go to in order to receive more child pornography. It also further demonstrates the danger he presents to the community and the children in his life.

Further, following the defendant's arrest in this case, his partner was interviewed by the FBI. The defendant's partner informed an FBI agent that shortly before the defendant's arrest, she had observed the defendant using an application called "Kid Chat." She saw messages between Sears and another party and was concerned when she looked up information about this application and found it was a chat room for teens between the ages of 13 and 18. This is further

evidence of the danger the defendant presents to the community, even if not captured in a prior criminal conviction.

The Psychosexual Risk Assessment Report prepared by Dr. Ronald Weiner does not provide the government with any comfort as to the defendant's risk.  While he was unable to diagnose him with a pedophilic disorder, he noted that he displayed a strong pedophilic interest. He also placed him in the high-risk category for re-offense.

The defendant did acknowledge guilt at the time of his arrest and plead guilty at an early stage of the litigation.  These considerations were taken into account in the plea agreement negotiated by the parties, in which the government has agreed to cap its allocution to the bottom of the Estimated Guidelines Range.

### 3. Punishment, Deterrence, Protection, and Correction

The sentencing court "shall impose a sentence sufficient, but not greater than necessary" to comply with the need for a sentence: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The government's recommended sentence is sufficient, but not greater than necessary, to provide just punishment for the defendant's offenses.  The defendant's distribution of child pornography is harmful to society at large, as well as the specific child victims, and warrants a substantial sentence of imprisonment.  As a matter of general deterrence, a sentence of incarceration signals that trafficking in child pornography represents a serious crime that cannot be tolerated.  As a matter of specific deterrence, a prison sentence is appropriate and necessary to

deter the defendant from committing future child exploitation crimes.  Furthermore, a term of 10 years supervised release, with specific conditions recommended by the probation office, is crucial to ensuring that the defendant receives the treatment and support he needs to make further attempts to ensure that he does not commit similar offenses in the future.

### 4. Available Sentences

The defendant should be sentenced to a term of incarceration, as he is ineligible for probation because it is expressly precluded by the statute.  According to the PSR, the defendant does not appear to have the ability to pay a fine. *See* PSR ¶ 96.  In addition, the court should impose a lengthy term of supervised release to ensure that the defendant does not re-offend.  The conditions of supervised release should include: sex offender evaluation and treatment, restrictions on direct contact with minors, and monitoring of the defendant's use of the Internet, computers, and any other Internet-capable devices.  Essentially, the Court should impose all of the special conditions recommended by the United States Office of Probation in the PSR and at sentencing.

### 5. Restitution

Prior to sentencing in this matter, the defendant, through his counsel, voluntarily negotiated restitution agreements directly with the counsel for the three known victims identified in this case who are seeking restitution.[4]  The defendant agreed to pay each of the identified victims $3000, for a total of $9000.  The government will be requesting, as part of the Judgement and Commitment Order in this case, that the Court order restitution to be paid to victims "Pia," "Violet" & "Jenny" in the amount of $3000 each.

---

[4]     Their victim impact statements are being separately filed under seal.

**CONCLUSION**

WHEREFORE, for all of the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of imprisonment of 97 months, to be followed by 10 years of supervised release, with the recommended conditions of supervision. The defendant is further required by statute to register as a sex offender for a minimum period of 25 years.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY

_____/s/_____
Jodi Lazarus
Assistant United States Attorney
D.C. Bar 975420
555 4th Street, N.W., Room 10-842
Washington, D.C. 20530
(202) 252-7053
jodi.lazarus@usdoj.gov