UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) <br> ) <br> ) |
| v. | )    No. 19-cr-21 (KBJ) <br> ) |
| JEREMY SEARS, | ) <br> ) |
| Defendant. | ) <br> ) |

## MEMORANDUM OPINION AND ORDER

Before this Court at present is Defendant Jeremy Sears's motion seeking compassionate release from prison pursuant to section 3582(c)(1)(A) of Title 18 of the United States Code. (*See* Def.'s Mot. for Compassionate Release ("Def.'s Mot."), ECF No. 31; *see also* Def.'s Letter, ECF No. 28.) Sears, who is currently incarcerated at FCI Elkton in Lisbon, Ohio, maintains that he has "diabetes mellitus, essential hypertension, asthma, and depression," which increase his risk of serious complications from contracting COVID-19, and that the disease is rapidly spreading in the facility in which he is housed. (Def.'s Mot. at 2.)[1] And he contends that "the exponential infection rate of COVID-19 and high mortality rate for those with pre-existing conditions, coupled with the proven inability of the [Bureau of Prisons ("BOP")] to address a surge in [COVID-19] cases" constitute "extraordinary and compelling circumstances that warrant a sentence reduction in this case." (Def.'s Mot. at 49.)

This Court has previously explained its view of the scope of a district court's statutory authority to grant a defendant's motion for compassionate release during the

---

[1] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

1

COVID-19 pandemic. *See United States v. Johnson*, No. 15-CR-125 (KBJ), 2020 WL 3041923, at *2–5 (D.D.C. May 16, 2020) (describing the statutory framework for motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A)). It has now reviewed Sears's motion, the Government's opposition thereto (*see* Gov't Opp'n, ECF No. 33), and Sears's reply (*see* Def.'s Reply, ECF No. 34) in light of those standards, and for the reasons explained below, the Court finds that Sears's release at this time would undermine the purposes of punishment that this Court evaluated when it imposed the original sentence pursuant to the factors Congress set forth in section 3553(a) of Title 18 of the United States Code. *See Johnson*, 2020 WL 3041923, at *5 (suggesting that the section 3553(a) factors might warrant denial of a motion for compassionate release brought under section 3582(c)(1)(A) even if the COVID-19 pandemic and the defendant's medical conditions are extraordinary and compelling reasons to release him). Consequently, Sears's motion for compassionate release must be **DENIED**.

I.

In *Johnson*, this Court detailed its understanding of section 3582(c)(1)(A)'s framework for a district court's consideration of a defendant's motion for compassionate release, *see Johnson*, 2020 WL 3041923, at *3–4, and that legal analysis is incorporated by reference here. In brief and as relevant to Sears's compassionate release motion, under section 3582(c)(1)(A), a court must undertake what is essentially a three-pronged inquiry to determine: *first*, whether the defendant has exhausted his administrative remedies, and if not, whether the statutory exhaustion requirement should be waived; *second*, whether there are extraordinary and compelling reasons that warrant a reduction of the term of imprisonment that the court previously imposed; and

*third*, whether any such reduction is consistent with the factors set forth in section 3553(a), including and especially the need for the sentence imposed to ensure public safety. *See id.*; *see also* 18 U.S.C. § 3582(c)(1)(A). And the Court may only reduce a defendant's term of imprisonment under section 3582(c)(1)(A) if each of these three inquiries results in an affirmative answer. *See Johnson*, 2020 WL 3041923, at *3–4; *see also United States v. Wade*, No. 2:99-cr-00257-3, 2020 WL 1864906, at *6–7 (C.D. Cal. Apr. 13, 2020).

II.

In the instant case, Sears has failed to exhaust his administrative remedies, but this Court agrees with defense counsel that any requirement that he do so must be excused on futility grounds. (*See* Def.'s Mot. at 15–16 (explaining that seeking administrative remedy is futile because Sears was among 760 inmates at FCI Elkton that BOP evaluated in response to a court order and found "did not qualify" for home confinement); *see also* Def.'s Reply at 3 (indicating that Sears's inmate records show that BOP "evaluated him for home confinement on May 25, 2020, and denied him" such release).) The Court is also persuaded that Sears has serious underlying medical conditions that, when considered in conjunction with the COVID-19 pandemic and the prevalence of that disease in the facility where he is housed, qualify as "extraordinary and compelling" reasons to justify his release. (*See* Def.'s Mot. at 34–49; Ex. A to Def.'s Mot., ECF No. 35, at 8 (medical records showing current conditions of diabetes mellitus, essential hypertension, asthma, and depression)); *see also Johnson*, 2020 WL 3041923, at *10–11 (finding that the spread of COVID-19 in a jail facility and the defendant's "mental and physical health conditions[] constitute extraordinary and

compelling reasons" for a sentence reduction for the purpose of section 3582(c)(1)(A) (internal quotation marks, alterations, and citation omitted)).

Nevertheless, section 3582 requires the Court to consider the section 3553(a) factors, to the extent that they are appropriate, prior to ordering the requested sentence reduction, *see* 18 U.S.C. § 3582(c)(1)(A), and this Court does not, and cannot, find that a reduction in Sears's term of imprisonment is consistent with the section 3553(a) factors at this time.  Specifically, the applicable statutory sentencing factors—including "the nature and circumstances of the offense[,]" 18 U.S.C. § 3553(a)(1), "the history and characteristics of the defendant[,]" *id.*, and "the need for the sentence imposed . . . to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C)—compel the conclusion that the purposes of punishment would not be served if Sears's sentence was reduced from the 71 months of imprisonment that the Court imposed during Sears's sentencing hearing on May 15, 2019, to the 23 months Sears has served up to this point.  *See, e.g.*, *United States v. Jones*, No. 17-CR-00070-VC-1, 2020 WL 1814616, at *1 (N.D. Cal. Apr. 10, 2020) (finding that, where a defendant's original sentence for possession and distribution of child pornography was 72 months, an effective sentence of 17 months "would fail to reflect the seriousness of the offense and to provide just punishment").

With respect to "the nature and circumstances" of Sears's offense, 18 U.S.C. § 3553(a)(1), Sears pled guilty to an information charging him with distribution of child pornography, in violation of section 2252(a)(2) of Title 18.  (*See* Minute Entry of Feb. 21, 2019; Information, ECF No. 13.)  As this Court stated during Sears's sentencing hearing, the possession and distribution of child pornography is an extremely serious

crime because it involves trading depictions of the actual sexual assault of children, and the abuse that these child victims endure will remain available on the internet forever. As relevant here, on multiple occasions in December of 2017, Sears used the instant messaging application "Kik" to send hundreds of videos depicting the sexual abuse of teenage and prepubescent minors to an undercover officer, including videos of "female children under the age of approximately ten[.]"  (Statement of Offense, ECF No. 17, at 2.)

Importantly, Sears also admitted to doing *more* than just possessing and distributing generic and graphic depictions of child molestation.  In addition, Sears also provided photos of his *own* prepubescent female relative to the undercover officer, to verify that he had access to a child and thus encourage his own reciept of pornographic images involving child victims.  (*See* Statement of Offense at 5.)[2]  Sears also sent similar photos of a friend's prepubescent child which were taken without the child's knowledge and, again, were distributed to curry favor with someone Sears believed would get sexual gratification from such photos.  Neither of these sets of photos constituted child pornography in and of themselves because both children were clothed, and the Government did not bring separate charges related to these particular acts.  But as the Court previously explained, it is clear that these two young girls were victims insofar as Sears was an adult in their lives who intentionally sexualized them by recording them without their knowledge and sharing their images with predators.  Those despicable acts, as well as the hundreds of videos of abuse, degradation, and sexual violence against children that Sears possessed and distributed, strongly suggest that

---

[2] The Court uses the phrase "female relative" to protect the minor child's privacy.

Sears poses a threat to children, and the disturbing nature of his offenses is sufficient to persuade this Court that a substantial period of incarceration was, and still is, justified.

Sears's history and characteristics, *see* 18 U.S.C. § 3553(a)(1), include the fact that Sears has no prior criminal history and also has an extensive network of family support. (*See* Def.'s Mot. at 54.) The Court took both of these circumstances into consideration when it sentenced Sears initially. But the Court also noted that Sears had a psychosexual evaluation that indicated that he is at high risk of reoffending without treatment (*see* Presentencing Report, ECF No. 23, ¶ 77), and it appears that Sears has not yet received any sex offender treatment while in BOP custody (*see* Def.'s Reply at 5). This is problematic primarily because the Court must assess the risk to public safety when it evaluates whether or not a defendant is too dangerous to be released notwithstanding the fact that there may be extraordinary and compelling reasons to do so. *See Johnson*, 2020 WL 3041923, at *11; *see also* U.S.S.G. § 1B1.13(1)(A), (2). And the evidence presented during Sears's initial sentencing proceeding plainly demonstrated that, in the absence of any sex offender treatment, Sears would continue to pose a danger to the community if he is released.

It is also entirely unclear whether any conditions of release could be fashioned that could ensure the safety of the community. Sears has proposed a release plan in which he represents that he can live with his mother, but Sears has apparently had an estranged relationship with his mother for much of his life (*see* Def.'s Reply at 7), and that circumstance raises the specter of instability with respect to this proposed living arrangement. *See Coleman v. United States*, No. 4:17-CR-69, 2020 WL 3039123, at *5 (E.D. Va. June 4, 2020) (explaining that defendant's alienation from family members

"cast[s] doubt on whether placement with [defendant's] mother [was] a suitable post-release arrangement"). What is more, given the ease with which child pornography is accessible in the modern world, Sears's release is likely to require stringent and frequent monitoring. This, too, poses a risk to the community, because the need for intensive monitoring in the age of COVID-19 would likely result in "heightened safety risks . . . to the probation officers who would be tasked with monitoring his behavior[.]" *United States v. Lee*, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *5 (D.D.C. Mar. 30, 2020).

### III.

For the foregoing reasons, this Court finds that, despite the fact that COVID-19 and Sears's medical condition are extraordinary and compelling reasons to grant his motion for compassionate release, "section 3553(a)'s purposes of punishment require maintenance of the original prison term." *Johnson*, 2020 WL 3041923, at *5.

Accordingly, it is hereby

**ORDERED** that Defendant's Emergency Motion for Compassionate Release (ECF No. 31) is **DENIED**.

Date:  June 16, 2020

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge